FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 21 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
ALLAN CAMERON,

       Petitioner,

  - against -

JOSEPH T. SMITH,

       Respondent.
-------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

11 Civ. 5100 (BMC)

**COGAN**, District Judge.

  Petitioner brings this habeas corpus proceeding under 28 U.S.C. § 2254 challenging his conviction for first degree murder arising out of the fatal shooting of a police officer. The shooting occurred when petitioner, while driving his car without a license, ran a red light and an unmarked police car gave chase when he refused to pull over. Shots were fired from petitioner's car and one of the officers in the pursuing car was killed. The car was found in a garage near the apartment where petitioner's girlfriend lived, and petitioner was arrested at the apartment about five hours after the shooting. Additional facts will be set forth below as they pertain to each point of error that petitioner raises here.

  The petition contains three points of error. In Points I and II, petitioner challenges the admission of his post-arrest self-inculpatory statements on four grounds: (1) the police constructively arrested him without a warrant in an apartment by coercing or threatening him to come out into the hall, thus rendering his statements inadmissible; alternatively, (2) he made one statement after he had invoked his right to counsel, which statement therefore should have been suppressed; (3) when petitioner moved for a pretrial hearing to suppress his statements on the

ground that they were obtained after the police arrested him without probable cause, the trial court improperly denied that portion of his motion without a hearing; and (4) when new facts emerged at trial showing that there was no probable cause for his arrest, his trial counsel was ineffective for not renewing his motion to suppress the statements on that ground. In addition to these suppression points, petitioner asserts, in Point III of the petition, that he was denied due process when the trial court prohibited his counsel from cross-examining a police officer as to the use of the murder weapon in an unrelated shooting.

This decision considers Points I and III of the petition. Point II shall be addressed following additional submissions by the parties as described below.

## I. The Payton Issue

In a pretrial motion, petitioner sought to exclude all post-arrest statements alleging, *inter alia*, that his arrest was in violation of the rule set forth in Payton v. N.Y., 445 U.S. 573, 100 S. Ct. 1371 (1980). In that case, the Supreme Court held that under the Fourth Amendment, police may not effectuate an arrest within a person's home in the absence of an arrest warrant. Petitioner conceded that he was arrested in the hallway of his girlfriend's apartment – a public place – and not in the apartment itself, but contended that the police presence in and around the apartment building was so inherently coercive that it compelled his departure from the apartment and thus he was "constructively arrested" in the apartment.[1]

In a detailed written decision after an extensive evidentiary hearing, the hearing court rejected this claim, holding in essence that petitioner had no knowledge of the extent of the police presence in the building and that the police took no action to threaten or coerce him to

---

[1] The hearing court rejected the prosecutor's claim that petitioner had no standing to raise this issue because it was not his residence, and that issue dropped from the case at that point.

leave the apartment; they merely told him to come out into the hall because they wanted to speak to him. The Appellate Division affirmed this ruling on the merits, holding that "[t]here was no violation of Payton . . . when the police, without making any threats, directed the defendant to come out of the apartment and arrested him in the hallway," and the Court of Appeals denied leave to appeal. People v. Cameron, 74 A.D.3d 1223, 905 N.Y.S.2d 619 (2d Dep't) (citations omitted), leave to appeal denied, 15 N.Y.3d 892, 912 N.Y.S.2d 580 (2010) (table).

It appears that petitioner cannot pursue this claim as it is non-cognizable on federal habeas corpus review. In Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037 (1976), the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims, of which Payton is one, where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. The basis for the Court's ruling was that in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95.

Based upon Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir.1977) (en banc). Courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See, e.g., Capellan v. Riley, 975 F.2d 67,

70-72 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298, 318 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393, 412 (S.D.N.Y. 2005). Thus, district courts within the Circuit have almost uniformly declined to hear Payton claim on habeas review. See, e.g., Benton v. Brown, 537 F. Supp. 2d 584, 591 (S.D.N.Y. 2008); Daily v. N.Y., 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005); Long v. Donnelly, 335 F. Supp. 2d 450, 457-59 (S.D.N.Y. 2004).[2]

Petitioner has not complained about the process he received here. The state court held an extensive evidentiary hearing on his motion and rendered a lengthy, reasoned written decision rejecting the claim on the merits, and the Appellate Division expressly addressed and rejected it on appeal. It therefore appears that the claim may not be raised again on habeas corpus review.[3] However, because petitioner has not had an opportunity to address this point, the Court will provide him with the opportunity to do so, as described below.

**II. The Miranda Issue**

Petitioner was provided with and acknowledged his Miranda rights after his arrest (although he declined to sign a waiver form) but nevertheless did not invoke his rights and proceeded to answer questions from detectives, making several inculpatory statements in an interrogation that lasted several hours. He then requested a lawyer and the detectives terminated the questioning. Several hours later, as petitioner was awaiting transport from the police precinct

---

[2] Those cases that have considered Payton claims on habeas review have generally done so where the Payton claim is subsumed within a claim for ineffective assistance of counsel, i.e., the failure to raise the Payton claim in the state court proceeding. See, e.g., Watkins v. Perez, No. 05 Civ. 477, 2007 U.S. Dist. LEXIS 33736, at *26-28 (S.D.N.Y. May 7, 2007). Petitioner has no such claim here since his counsel raised and fully litigated the Payton claim in state court.

[3] As noted in the introductory paragraph of this decision, petitioner also claims that his statements should have been suppressed because they were made after he was arrested without probable cause and because his lawyer, upon being confronted at trial with facts showing the lack of probable cause, did not move to renew his motion on that ground. It may well be that the first of these points is also barred by Stone v.Powell. However, because the state court denied petitioner's motion for a hearing on the issue, and because the claim will have to be considered to some extent in the context of petitioner's claim for ineffective assistance of counsel, the Court reserves decision pending additional briefing from the parties.

to arraignment, he asked Detective Platt, a detective who had previously interrogated him and who was going to transport him, what he was being charged with and what evidence the police had against him. The detective outlined the evidence, which was strong, including the fact that petitioner's girlfriend had told police that she had taken a gun from petitioner and thrown it out the apartment window, and that the police had recovered a gun in that vicinity.

A few minutes later, petitioner, Detective Platt, and other detectives left in a police car for central booking. After several minutes of silence in the car, petitioner then asked if the gun used in the crime had been recovered, and after a brief pause, stated that "My fingerprints were not on the gun."[4] Detective Platt replied, "Not when you wiped them off with baby wipes." Petitioner then stated, with obvious reference to his girlfriend, "Did that [expletive deleted] tell you everything?"

As part of its written decision arising from the same evidentiary hearing described above, the suppression court ruled as follows:

> The first statement about the gun and the fingerprints was clearly voluntary; it was not in response to police questioning and was not prompted by [the Detective's] response to the defendant's earlier questions at the Precinct, which were not calculated to obtain any additional statements. Thus, even though this statement was made **after** the defendant had asserted his right to counsel, it was wholly voluntary and may be admitted a trial. The subsequent statement, however, must be suppressed as it was made in direct response to [the Detective's] confrontational reply, which was, in this court's estimation, calculated to get a response. As such, the reply was not voluntary and must be suppressed.

(emphasis in original). The Appellate Division affirmed this ruling on the merits, holding that "the record supports the Supreme Court's finding that the defendant's statement was spontaneous

---

[4] While Detective Platt testified that he had not spoken between petitioner's question and his statement that his "fingerprints were not on the gun," Detective McCafferty, also in the car, stated that Detective Platt had answered that the police had recovered the gun prior to petitioner's statement about his fingerprints. The hearing court credited Detective Platt's testimony. Petitioner appears to have conceded this fact on appeal and does not challenge the hearing court's determination here. In any event, the discrepancy is immaterial for this petition, as discussed in greater detail below.

5

and not the result of any improper police conduct or questioning." Cameron, 74 A.D.3d at 1224, 905 N.Y.S.2d at 620.

Because the Appellate Division affirmed the hearing court's decision on the merits, its decision is entitled to deferential review under 28 U.S.C. § 2254(d). That statute provides that federal habeas corpus relief is only available if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The Supreme Court has recently clarified that this standard of review is extremely narrow, intended only as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781 (1979) (Stevens, J., concurring)). State court decisions must "be given the benefit of the doubt," Felkner v. Jackson, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1305, 1307 (2011) (internal quotation marks and citation omitted), and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington, 131 S. Ct. at 786. Indeed, in Harrington, the Supreme Court went so far as to hold that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. This standard of "no possibility of disagreement" among "fairminded jurists" as to the existence of legal error is arguably the narrowest standard of judicial review in the law.[5]

---

[5] Harrington and Cavazos v. Smith, ⎯⎯ U.S. ⎯⎯, 132 S. Ct. 2 (2011), may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far

6

The controlling Supreme Court authority on petitioner's issue is R.I. v. Innis, 446 U.S. 291, 100 S. Ct. 1682 (1980). In Innis, the Supreme Court defined interrogation as either express questioning or its functional equivalent. Id. at 300-01. The functional equivalent of express questioning includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. However, the Second Circuit has explained that police conduct is not the functional equivalent of interrogation simply because it struck a responsive cord. Acosta v. Artuz, 575 F.3d 177, 190 (2d Cir. 2009). Moreover, although the test of "functional equivalence" is objective, the Supreme Court has stated that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself." Ariz. v. Mauro, 481 U.S. 520, 529, 107 S. Ct. 1931 (1987). Finally, it must be noted that "courts have not endorsed the proposition that statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect constitute interrogation as a matter of law," and "courts have generally rejected claims . . . that disclosure of . . . inculpatory evidence possessed by the police, without more, constitutes 'interrogation' under Innis." Acosta, 575 F.3d at 191-92 (citations and internal quotation marks omitted).

Applying the Harrington/Cavazos standard under 28 U.S.C. § 2254(d) to the facts present here, I cannot find that the decision of the Appellate Division was contrary to or an unreasonable application of Innis. In many cases, including Innis itself, the issue is whether unsolicited statements or questions by the police, made either before advice of Miranda rights or after their invocation, constituted the functional equivalent of interrogation. See, e.g., Innis, 446 U.S. at

---

off the mark as to suggest judicial incompetence." The Harrington/Cavazos standard may not quite require "judicial incompetence," but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," it certainly comes close. The Second Circuit has already noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, No. 10-224-pr, 2001 WL 6287960 (2d Cir. Dec. 16, 2011) (granting motion to vacate its earlier decision granting habeas relief upon consideration of Cavazos), vacating, 649 F.3d 132 (2d Cir. 2011).

7

302-03; Acosta, 575 F.3d at 191-92; Daniel v. Conway, 498 F. Supp. 2d 673, 681 (S.D.N.Y. 2007); United States v. Heatley, 994 F. Supp. 475, 476-77 (S.D.N.Y. 1998). Here, in contrast, Detective Platt's statements were not unsolicited – petitioner specifically requested the information – and the detective's answers did not call for any response from petitioner at all. Petitioner initiated the conversation, and the police were not required to remain mute or to refuse to answer petitioner's questions. There is no suggestion that Detective Platt mischaracterized the evidence, a tactic that is generally permissible and used in interrogations. See Frazier v. Cupp, 394 U.S. 731, 739, 89 S. Ct. 1420 (1969); Whitlach v. Senkowski, 344 F. Supp. 2d 898, 903 (W.D.N.Y. 2004); see also Holland v. McGinnis, 963 F.2d 1044, 1051 (7th Cir. 1992). Rather, the detective accurately summarized the evidence that the police had developed to that point.

Further, the fact that petitioner did not say anything when he heard the evidence against him until after he was in the police car over five minutes later buttresses the hearing court's conclusion that the detective's answer was objectively non-conversational, that is, not designed to elicit an incriminating response. Finally, I note that the hearing court was sensitive to the issue presented, as it granted the motion to suppress petitioner's deliberately provoked admission, allowing in only his statements that were not deliberately provoked. It thus recognized that statements may be the functional equivalent of direct questioning.

Again, the issue before this Court is not whether the Appellate Division erred in sustaining the hearing court's ruling. The issue under Harrington is whether all reasonable jurists would agree that the Appellate Division erred. Because the hearing court's determination of the issue and the Appellate Division's affirmance of it were rational and reasoned applications of the principal established in Innis, habeas relief cannot be granted.

## III. The Evidentiary Issue

Prior to invoking his Miranda rights, petitioner told police different variations of the story of his whereabouts and circumstances at the time of the shooting. One of the earlier variations acknowledged that he was in his car where the shell casings were found and that he fled the police, along with a friend of his named Max, and that he (petitioner) had heard shots being fired as they fled. Later variations of the story, including a written statement signed by petitioner, did not mention Max, and none of the variations of the story further identified Max beyond his first name.

At trial, prior to the prosecution's direct examination of its ballistics expert, defense counsel advised the trial court at sidebar of his intent to cross-examine the expert with regard to a ballistics report that the prosecution had turned over prior to trial.[6] The ballistics report disclosed that the murder weapon had been used in a prior shooting unrelated to petitioner. Trial counsel's proffered theory was that perhaps Max or somebody else had committed the murder for which petitioner was being tried, and thus the evidence of third-party possession and use of the weapon at some point in the past would tend to exonerate petitioner.

The trial court, after hearing opposing argument from the prosecutor, declined to allow cross-examination on the issue. It reasoned that the prejudicial impact of the evidence outweighed its probative value because there was no evidence of third-party involvement in the crime at issue. The trial court noted that petitioner had never stated that a gun was being fired from within the car where he was sitting, only that he had "heard shots." Thus, even considering

---

[6] The sidebar was off the record prior to the expert's testimony, but the parties and the trial court stated their positions on the record following the testimony.

9

petitioner's offered and then retracted story about Max, petitioner would have known if Max had fired the gun while sitting next to petitioner.[7] The trial court therefore concluded that allowing the cross-examination would introduce a collateral issue into the case and invite speculation by the jury. The Appellate Division affirmed that ruling, holding that petitioner's argument concerning the ballistics report "was purely speculative in nature." Cameron, 74 A.D.3d at 1224, 905 N.Y.S.2d at 621.

Because the Appellate Division rejected petitioner's claim on the merits, this Court's review is subject to the deferential standard described above. This presents a doubly difficult burden for petitioner because the standard for habeas corpus relief based on a state court's alleged evidentiary error is already narrow. It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983); see generally Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law." (internal quotation marks and citation omitted)). For a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, a petitioner must "show that the error deprived [him] of a _fundamentally fair_ trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (per curiam) (alteration and emphasis in original) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)); Taylor, 708 F.2d at 891.

The Supreme Court in Holmes v. South Carolina, 547 U.S. 319, 126 S. Ct. 1727 (2006), summarized the applicable rules governing a defendant's right to introduce evidence in support of a defense that another party committed the crime. In doing so, the Court made it clear that

---

[7] The ballistics evidence showed shell casings from the murder weapon inside petitioner's car.

10

while a defendant has a constitutional right to advance such an argument, trial judges retain the discretion to exclude evidence that is unduly speculative or would tend to confuse the jury:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment, prejudice [or] confusion of the issues.

Id. at 326-27, 126 S. Ct. at 1732 (alteration in original) (internal quotation marks and citations omitted).

The facts in Holmes furnish a good example of when a trial court commits constitutional error by excluding evidence of third-party guilt. The prosecution had forensic evidence of Holmes' guilt, but that evidence was vigorously challenged through expert testimony as having been contaminated. As to Holmes' proffer of evidence of third-party guilt, Holmes had evidence that an identified third party had admitted committing the crime to several individuals and the third party had expressly exonerated Holmes. Holmes' evidence also would have shown that this third party had been in the area of the crime when it happened. Yet, because the state courts believed that the trial should only be about the reliability of the prosecution's forensic evidence, they excluded Holmes' evidence of third-party guilt without even considering the prejudicial impact versus probative value equation. The Supreme Court held that this was error, as the defendant's proffer itself had to be considered along with the evidence offered by the prosecution.

Applying these authorities through the deferential review standard under 28 U.S.C. § 2254(d), the facts of the instant case present no basis for habeas corpus relief. The defense at trial did not present any coherent theory of third-party guilt, and clearly defense counsel was

hoping to gamble on creating jury speculation. The proffer consisted solely of the fact that the murder weapon had been used in a prior crime, and that an individual identified only by petitioner during his interrogation, and only by first name despite being familiar enough with petitioner to be in his car, may or may not have been in petitioner's car when petitioner heard shots being fired (depending on which of petitioner's statements were accepted). As was noted in the argument concerning this proffer, notably absent from it was any contention by petitioner that the shots he heard were fired from within his fleeing car, and thus by Max, something he obviously would have known had it occurred. The defense's theory was thus something of a "Hail Mary" pass.

The trial court's method by which it exercised its discretion in this case was the opposite of Holmes. Rather than focusing exclusively on the strength of the evidence offered by the prosecution and not even considering the evidence of third-party guilt, the trial court here looked hard at petitioner's proffer, and found it so speculative that it would only tend to confuse the jury. That potential confusion ran the risk of prejudicing the prosecution's case, and yet it was so vague that it had virtually no probative value as to petitioner's guilt or innocence. The Appellate Division's affirmance of the ruling was not contrary to or an unreasonable application of Supreme Court precedent.

## CONCLUSION

Based upon the rulings set forth above, it is hereby ORDERED as follows:

1. That portion of Point I of the petition that alleges a Miranda violation and Point III of the petition are DENIED;

2. Petitioner shall show cause within 30 days why the remaining portion of Point I (the Payton claim) is cognizable on habeas corpus review;

3. Respondent shall submit opposition to Point II of the Petition within 30 days; and

4. The parties may reply to each other's submissions within 30 days of their respective submissions.

No judgment shall enter at this time. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to mail a copy of this decision to petitioner *pro se* together with a copy of any unreported cases cited herein.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
December 21, 2011